Ready to proceed? Yes, Your Honor. Are you reserving four? Yes, please. Fine. Are we? Good morning, Your Honors. May it please the Court, John Lomas on behalf of the appellant, ZURU Inc. This appeal is of a preliminary injunction against First, ZURU's Max, Buildmore branded toy action figures. There are a lot of issues. Sure. I don't have much time. Can I just get right to what concerns me? Sure. I mean, there's two things, but the main thing is the tape and the injection on that. I'm a little confused about the basis for the irreparable harm finding here because LEGO doesn't sell any tape, does it? Can you explain to me? I mean, and I found the district court's opinion on this a little opaque. I mean, obviously, I'm going to ask this to your friend, but can you just address the problem on the tape part? Sure. On the tape, Your Honor is correct. LEGO does not have, or at least we're not aware of, a competing product. That's not on the record. And then second, the irreparable harm argument that LEGO put forward was based on this idea that there was potential quality issues with certain ZURU products and that Did they put that argument forward with regards to the tape? No. And that's what I'm going to get to. That argument was only with respect with the discussion of that, the testimony concerning that argument was only with respect to the action figures, not with respect to the tape nor the bricks, the design that are the three bricks that are subject to the injunction as well. So I think in both the MEGA tape and the bricks that there was no discussion of quality issues with either. Well, the bricks, there was talk about lost profits. Well, there might have been talk about lost profits, but not the quality issues. I understand. But lost profits in some cases have been deemed to be a sufficient grounds to find irreparable harm. Right. And I don't think there was any evidence that was submitted that they had any lost profits. It was purely speculative. In fact, the LEGO witness testified that they had done no analysis of any lost sales from those brick sets. And we were talking about, for the brick sets, we're talking about only three bricks of several dozen different types that come in boxes of 200, 700 bricks. So for the idea that there could be some harm connected or some significant lost profits connected to value to three design bricks out of all those different hundreds of bricks in the set is pretty far afield in our view. I'd like to get back to the action figures on the copyright and infringement analysis for both. Because there, the district court analysis... I'm sorry. Yeah. Just because I want to follow up with what, before you get down to that. I know you want to get that because it's the heart of the case. Right. The bond. Mm-hmm. How much did you ask for the bond? Did you set a number? I believe it was tied to, it was at least the one and a half million dollars of expected cost. But I believe there was also testimony concerning the 10 million dollars of additional lost profit damages. What's our estimate? Eight to 10 million dollars in lost sales, possible eight to 10 lost. It was a sworn affidavit by a... Yes. Financial officer of some sort, but not with any charge, not with any backup, not with any statistics, not many documents. Sworn statement. Mm-hmm. And your adversary's argument is, well, you know, that's without the sworn, without some details, the court could ignore the sworn statement. Well, I mean, it turns out that, I mean, not on the record before the court at this time, but I mean, this thing has come to fruition with lost sales. And I don't think that the issue there was... I don't think there was a piece of paper that would back up the sworn affidavit. Mm-hmm. One of the things you argue is that, on page 73 of the blue brief, that if you prevail at trial, you can't collect more than the 25,000 dollars Legolas posted. That's not what law ends in. I mean, admittedly, the bond is supposed to cover the potential, but that doesn't limit you. It doesn't limit us in... Actually, that's the only thing that we would be guaranteed for. I understand, but your statement was just straight up, if you prevail, you can't collect more than the nominal 25,000. Off the bond. That's not true. Well, we'd have to have some sort of additional claim for damages or for costs, which would not be... Sure. Right. Okay. So, with respect to the copyright and trademark issue analysis on the figures, of course, any proper infringement analysis needs to start with the identification of the protected legal right. And here, in this case, the district court did not do that, did not identify, delineate the scope of either the copyright... The protected scope of the copyrights or the trademark at issue, and did not compare the actual protected scope of the copyright or trademark to the Zuru figures. With respect to the copyright, the district court's analysis ultimately... 172, the red ring. LEGO argues that Zuru never argued below that the district court, quote, improperly relied, close quote, on embodiments of the LEGO funds figures. Where on the record did Zuru make that argument before the district court? It's in pages 560 to 563 of the appendix. And the broader point is, though, in addition to just the reliance on additional figures, the broader point is the district court failed to limit the comparison to the proper protected scope of the copyright. Essentially, the district court's decision finds that, or relies on finding, that Zuru has effectively monopoly rights over a one and a half inch small humanoid toy figure. And that's not the law. That humanoid toy figure is an idea. And ideas, of course, are not protected by copyright. They're explicitly excluded from copyright protection under the statute. And the Second Circuit previously addressed the very limited scope of copyright protection that's available to human-like figures, and it's Mattel v. Azraq Hemway opinion, which should be a dispositive here. You cited 560 to 563? Yes. Where did you argue the district court improperly relied on embodiments of the LEGO fund figures? I see the comparative pictures and so on. We argued that... Here in 560 to 561, we're depicting the figures that LEGO's expert relied on, the Santa figure, and we described that these... Right at the bottom of 561, we talked about the plaintiff inaccurately stating that these figures are copyrighted and protected by the copyrights. They're not the ones that were the deposits for the copyrighted works. And this is one example of where we... You said they should do it. You said the court should. We said the court should. Should conduct a visual comparison of the works. Of the works, yes. That's right. I guess I'm looking at improperly relied on embodiments. Well, I guess the fundamental point is that the embodiments that they relied on included design features that do not exist in the copyrighted figures, including the yellow head and the two dots and small line for the face. And so that's one aspect of how the court relied on subject matter that was not, in this comparison, looked at heads of LEGO figures that were the same color as the Zuru figures and had more similar faces, but those faces and that color are not part of the copyrighted work. And the broader point, again, is that the district court failed to actually limit its analysis to what's the proper scope of the copyright because, one, again, it did what they call a total concept and field. Does that depend on how closely you're focusing on color, faces, and the rest of your analysis? Well, in all the parts, right. Correct. Because the total concept and field, it relied on... It seems to me that you're, even if the district court should have said, in his opinion, for purposes of doing this comparison, I have the copyright here in my left hand and I have the accused articles in the right hand and I'm looking at those instead of looking at article to article. You have to show the error was harmful. Well, no, I think we... And you show that the error is harmful, you're arguing that he should have focused more carefully on the detail. Well, not just the details, but the actual protected elements of the work. Because what the district court did was it, and it says it, did a total concept and field analysis. But the problem with the total concept and field analysis here is the total concept and field of these figures is a small 2-inch, 1.5-inch, 2-inch humanoid-type shape. And as the second circuit... Stepping on one in your bare feet. What's that? Stepping on one in your bare feet, yes. That adds to the fun. That adds to the fun. And the second circuit in that Mattel case addressed a very similar situation. Five-and-a-half-inch figures with very same human form, very same human pose, so same size, form, and pose, and held that the only copyrightable part, or the only part subject to the protection of the copyright was the design of the muscularity in those figures. Because the rest of it is just an idea, a human body form, a general human body form of a small size. And so size, first, the size is not something that's protected by copyright. And then, of course, the general human form isn't protected by copyright. And then the functional aspects aren't protected by copyright. And the district court didn't go through and delineate those aspects. Instead, again, it referred to its total concept and feel. And when you come back to what's actually just protected by the copyright, there's very little similarity. The differences far outweigh the similarities. Can I ask you one more question before your answer is already? Sure. The district court enjoined the figures on both the copyright and the trademark. And I think you argued that the trademark was improperly based upon a presumption, which is probably not good anymore after eBay. Right, the irreparable harm aspect, yes. Does that matter if we affirm on the copyright issue? I mean, if we conclude that the preliminary injunction was properly given based upon the copyright issue, then does the trademark issue matter? Does the trademark issue matter for the presumption? I mean, they're separate. No, no, no. On the legal issue. I mean, yeah. Assume we agree with you that the legal analysis on the trademark is wrong and that can't support an injunction. Does that do anything to the effect of the injunction because it's also based upon the copyright infringement? I mean, it enjoined the products based on both. But, I mean, if you still have the one, I mean, and if the district court's finding the other, I don't think it ultimately does. It doesn't. Right. But, of course. Well, if the district court had written in the opinion I'm entering a preliminary injunction solely because of a violation of both copyright, patent, and trademark, and linked them all up, then you'd have an argument. But, absent that argument, it would seem that the copyright violation would support the injunction even if the trademark fell apart. If there was a copyright violation. And, again. Yeah, that's a hypothetical. No, sure, sure, sure. I mean, I think it's, again, it's important to come back to there are a lot of issues here. We have to figure out how we're going to write the opinion even if we disagree with the district court in some respects. Sure, sure. No, I understand. Would you, could I walk through the copyrighted features or is that something that you're, I mean, what? Sure. Yeah, yeah, yeah. So, the, oh, I am, okay. Well, I'll just go through because the, I mean, the copyright features, the design features that are actually subject to copyright are the distinctive trapezoidal torso, the fixed W rectangular legs with the bulge in the front, the gap from the top of the torso to the arms, the bright yellow head with the face, the two-dot face, and the very short but wide neck. And none of these things are found in the Zuru products. In fact, the Zuru Action figures, the only similarities are the square shape at the bottom of the feet. But even those feet are different thickness, different width. They stub, the feet come out farther from, in the Lego product from the legs than they do from the Zuru product. And they'll both have similar cylindrical shape. The rest of the head is different. The proportion of the head is outsized in the Zuru figure to the rest of the body. The head of the Lego figure is smaller proportionally to the rest of the body. And, of course, then there's a yellow, the yellow nature of the head and then the smiley face that does not exist on the Zuru figure. So, ultimately... And what's the standard review? Clear error? Well, on that part, it's, in our view, it's a legal issue here because the court did not delineate what was protected by copyright and what wasn't. And it just looked at a total concept and feel analysis of the entire figure. And so it did not do a proper legal analysis because it never looked at what was protected. Perhaps we view that as an error, but your burden is to show that there wasn't, that the error was harmful. Right. If we look at the copyright on the one hand and the figurines on the other and we were the district court judge, then the error was harmless. Well, but, I mean, if you're only focusing on the copyrighted features, the differences far outweigh the similarities. That's then taking the blur of your eyes standard, which seems odd. But, I mean, the notion, especially when children are concerned, you're supposed to pay less attention to detail and more attention to sort of general presentation. Well, the evidence in the record suggests that it was undisputed that everyone thought that the children would actually look more at the differences. And LEGO's entire basis of irreparable harm was on the idea that a child may have a bad... Right, but the legal standard announced in the case law of the Second Circuit doesn't depend on the child as the ordinary purchaser. No, but the... It probably should be in the case of this thing, but it's not. But the irreparable harm analysis was linked to the idea that the child was confused by the source, that it was a LEGO product when it had a bad experience. But here, the child would see the differences because they're fundamentally different figures. You're well over, counsel. Thank you, Your Honor. I'm going to give you two minutes. You've got to take a lot of your time. May it please the Court, I'm Beth Alquist with Dave Pitney, representing the Appellees, the LEGO Group. I want to start with Judge Hughes' question about irreparable harm that concerned you with respect to the Makitape product. The Makitape product itself wasn't accused of infringement. It was selling... Zuru was selling that product using infringing images on the product. And so the irreparable harm that caused that product to be removed was because of the figurines that it was displaying on it. The Court also held... What's the harm other than the fact that it's infringing? So... There's no claim that the product was faulty, that the legs would fall off or something like that, right? We're talking now about the packages. The problem is that the image that they see, the minifigure figurine or the friend's figurine is then associated with our product and, in fact, physical specimens were before the Court for all of these products and the Court did... That will happen in any case, any instance of infringement of the copyright. That is true. And that wouldn't ordinarily be enough for irreparable harm. That just is infringement. Your reputational argument, your, oh my God, everybody will think that LEGO is crummy. The only evidence I saw that supported that was that in one instance the legs fell off and so there was somebody saying, oh, it's great, yeah, but the product was faulty. And giving you the benefit of that argument for showing that there would be harm to reputation and all the rest, that doesn't carry over to the tape product, in my mind. And I think there's evidence in the record that it did carry over to the tape product. The physical specimens of the tape product. Where shows that there's something, the image breaks down, or that the, how is LEGO's name disparaged by the image that's on the tape package? The image is substantially similar to our genuine product. How about a sight? We're looking for something because, let's assume that, in my judgment, if we took away the legs fell off on the figures, you wouldn't be able to show irreparable harm on that ground. In addition to the legs falling off problem, there was clutch power problems. So, clutch power. Clutch power is what the witnesses explained in the LEGO system as how the knobs sticks together. That's not on the label. The tape product doesn't have any stick problem. Well, it actually does. Where's the evidence on that? That's the problem. All I see is this figure infringes our patents and doesn't link up the actual product that was enjoined with irreparable harm. In this case, it was all of it, right? Can you be specific? Where is specific evidence that the infringing image on the tape product somehow has irreparable harm? Based on the tape product, not on all this other stuff. Record site. I don't have a record site for a specific tape product, but in the whole, the court found irreparable harm because of so many different problems. He can enjoin the other stuff because he found that there's quality issues, there's market share issues, there's loss of profits. None of those, there's no evidence supporting that with regard to the tape product. You don't even make the tape product, so you can't have loss of profit or market share issues with regard to the tape product. The only thing I could potentially see is them associating the tape product with you and therefore having quality products, but I didn't see any evidence that the tape product was inferior. There is no evidence in the record specifically that the tape product is inferior. So what is the evidence for irreparable harm on the tape product? It is associating our trademark and our copyrights with a different product. It's causing the consumer to purchase the otherwise inferior product. Yes, Your Honor. Exactly. But the product is not inferior. The physical specimen in the record that the court indicated he looked at shows that it's inferior. It's not inferior to a Lego product because we don't sell it, but it is not a quality product. You say that, but you don't have any evidence. The only evidence is the actual physical specimen. Nobody said it was inferior. So what about the irreparable harm on the blocks? Give me a record site to the irreparable harm on the blocks.  to the patent infringement on the block. There are two instances that the court found for irreparable harm on the blocks. One was that it would become a compulsory license. The court said in his ruling that allowing these bricks to be sold turns into a compulsory license if we allow it. David Buxbaum testified below that the Lego Group does not and has never licensed any of its patents or copyrights or trademarks to competitor manufacturers. How does that work? If you don't enjoin it, it's a compulsory license. What does that mean? They would be allowed to sell it if it's not enjoined. We don't license any other manufacturer to do that. But that happens all the time in regular patent cases where there's not enough to give an injunction and so there's damages or some kind of license. That's not support itself for the injunction. You have to give other support for the injunction. And the other support for the injunction with respect to the bricks is again, it was the clutch power. Exhibit 1 in evidence the witnesses had and talked about the lack of clutch power so that it was an inferior product. Is there any market share or potential loss of market share directly attributable to these few bricks? To the few bricks specifically, no. There was no record evidence of that. Can you cite us specific records on the clutch power insofar as the blocks are concerned as opposed to the figurine the legs on the image wouldn't fit. So you've got the record give me a cite for the clutch power as to just the blocks. I understand the clutch power as part of the problem with the legs falling off because that's part of the reason why the legs fell off on the figures because they weren't tight enough stuck together. So the clutch power of the blocks is a different matter. That was Liz Knight's testimony she was Legos expert. And I believe it is in the appendix. I'm sorry your honors, I don't have the cite off the top of my head. It is her testimony in the appendix. And it is also the court's physical inspection of Exhibit 1 where you could feel the difference between the products and the clutch power which the court relied upon as well. Okay, so what's your response to the argument that the district court flubbed it here because instead of comparing the clutch power a text of a copyright to an accused article they compared an article to an embodiment? So in this case the copyright is the 3D sculpture itself. The court did receive evidence. The copyright is words on a page. Right? In this instance In this instance all you can give to the copyright office are photographs of the sculpture but what is protected is the shape what is protected is the sculpture itself. And the evidence in this case is that first the court did look at the deposit materials which are the pictures, but also the court had exemplars and David Buxbaum testified at appendix page 505 that the exemplars were representative samples of what was in the deposit materials and in fact Zuru's briefs called them representative samples of what was in the deposit materials and it is that shape and that form that is protected. It is not a 2D image it's a 3D image. And so of course the court in deciding a 3D sculpture should look at both of them and in fact courts regularly do that visual comparisons are of actual products in most of the cases and definitely the toy cases cited by both parties in the second circuit in this case. Would you agree with me that Rule 65C requires a bond to be posted in an amount sufficient to compensate a party in the event that it was wrongfully enjoined? How do we arrive at $25,000? So to answer, I believe again it was Judge Hughes' question to the other side Zuru never suggested an amount of a bond at all. In appeal it refers only to a declaration below that the court questioned the witness about during the preliminary injunction hearing and the court found that testimony to not be credible that the $8 to $10 million losses How do we know that the judge found that to be not credible? In that he questioned it and then didn't credit it. Do we have that colloquy in the record? That is at the appendix 1286 through 1288. 1286 through? 1288 Did you suggest the $25,000 number? No, Your Honor. So the district court just came up with this on its own? Yes, Your Honor. And based in part on the overwhelming evidence of the likelihood of success on the merits and specifically on many different types of intellectual property so this court found so much wrong and courts in the Second Circuit do have no bonds when there's overwhelming evidence of likelihood of success on the merits which is what happened in this case. I'm looking, I don't see it. 1286, I'm looking for Oh, it's 1290. Oh. Okay. So the standard is not what they could get in damages if they won you know in its entirety like if they win and they can show that they would have been out a million dollars it's a sliding scale that balances the possibility of relief with the amount of relief. That's exactly So if they have a 1% chance of winning a $1,000,000 they shouldn't get a $1,000,000 bond. That is correct, Your Honor. Is that the Second Circuit law? The Second Circuit law more specifically is that if there's such overwhelming evidence you can find no bond. There's broad discretion in this case and there are cases that I can cite for that that are actually not in the briefs but there's two Second Circuit two cases within the Second Circuit I should say. One is Lighting and Supplies versus Sunlight which is an Eastern District of New York case. The other is New York City Triathlon LLC versus New York City Triathlon Club obviously a trademark case also in the Southern District of New York in 2010. Both of those cases found that it's such an overwhelming likelihood of success that no bond is necessary and the court was well in its discretion in the absence of any evidence from Zuru about what the bond should be to set what it deemed to be an appropriate bond in this case. Can I just make sure your answer on the other question I asked your friend if we agree with the district court on the injunction based on the copyright for the figures but disagree with the trademark analysis, does that alter in any way the scope of the injunction or whether it should be affirmed? It does not. The scope of the injunction would be the same. Your Honors But if we found that there was insufficient evidence for irreparable harm on the for the box then we would send it back and that piece of the preliminary injunction has to be carved out, right? That's true, Your Honor. With respect to the box it is the same so the box to be specific was both patent infringement because the bricks were in there. They also used the infringing images on their product and so certainly that the evidence, the overwhelming evidence of likelihood of success on the merits in trademark and in copyright the irreparable harm can be caused there because the same low quality of play could certainly be infused into the images that are on the box and for that matter onto the tape. It could be the same issue. Your Honors I will address one what we called the heart of the case before the comparison of the idea as opposing counsel points out and the expression of the idea in this case they are saying that there's only one idea and it's a small figurine, a small humanoid figurine. There are actually two before this court both made by Lego that demonstrate the difference between the overall look and feel of the figurines. On page 5 of our brief that we've been talking about the minifigure figurine there's an image that appears there and on page 8 of our brief, the red brief, the friends figurine appears there. Both of those are different expressions of this same idea opposing counsel refers to. They're very different they're protected by different copyrights and they have a different overall look and feel. Zuru didn't go out and create it's own humanoid figurine that's small that can work with these products. It copied the minifigure figurine and so for them to argue here that somehow it's only an idea and they're allowed to do what they've done, I think the comparison of the friends and the minifigure figurine demonstrates for the court that there can be very different expressions a whole range of different expressions but what Zuru did here was copy ours and that's what's inappropriate. I see my time is about up unless there are further questions. We ask that the court affirm the judicial court's ruling in all respects. Thank you. Thank you counsel. You have two minutes. So again with respect to copyright again the issue is what it's not just the fact that there's an idea at issue it's what is protectable and what's not. The size of the figure is not protectable. In fact Lego cited a case in the same district court that it has against another party 2019 Westlaw 3387330 which incorporates an earlier finding from the same district court 874F2 at 95102 specifically referring to the fact that the size of the figure is not protected. So what we're left with are the design features of that figure which are the trapezoidal shape, the bulge with the legs, the yellow head and the small two dots for the eyes and the mouth small line for the mouth and that does not appear in any of the Xero action figures. The other thing is with respect to the harm and the quality issue at appendix 361 where the review about the body coming apart the person says awesome set, my boys love them. All of the reviews were positive. There was not one review that was negative and said that they did not like the product. So the evidence shows that the actual users of the product very much enjoyed them. With respect to the trademark issue with respect to the on the blocks of the figures because the figures are made differently to actually move. That's another feature that's different from the Xero Your adversary is suggesting that there was evidence in the record that the blocks themselves as manufactured by your client had clutch problems and that the Lego product doesn't have clutch problems and therefore there's a disparagement of Lego's reputation by the sale of a clutchless product. Right. My regulation of that testimony is that it was referring, it was in connection with the figures and that how they come apart and stick together and stay together. That's the clutch power. But the Xero figures are different than the Lego figures because the Lego figures are meant the legs aren't meant to turn around or move like the Xero figures are meant to do. So that issue is related to the fact that the Xero figures have a function moving their legs all the way around rotating from the entire body. And based on the issues that we've described about the court failing to define the proper scope of the copyright and the trademark before doing its analysis we believe the preliminary injunction should be reversed because it was an abuse of discretion and also for the issues with the irreparable harm we discussed. Thank you. The matter will stand submitted. Thank you counsel. All rise.